1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ELI JAY JONES, JR,

      Petitioner,

      v.

M. KNOWLES, et al.,

      Respondents.

NO. CV-07-404-RHW

**ORDER DENYING HABEAS
PETITION**

Before the Court is Petitioner's Petition for Writ of Habeas Corpus, 28 U.S.C. Section 2254 (Ct. Rec. 1). Petitioner is a state prisoner currently confined by the California Department of Corrections at High Desert State Prison, Susanville, California, and is proceeding *pro se*.[1]

Petitioner was convicted by a jury of the offenses of second degree murder (Cal. Penal Code § 187) and assault by means of force of a child in his care and custody, resulting in the death of a child under eight years old (Cal. Penal Code § 273ab). On January 17, 2003, Petitioner was sentenced to an indeterminate term of twenty-five years to life imprisonment.

Petitioner appealed his conviction and sentence. In his appeal, he asserted two claims for relief: (1) the trial court committed reversible error by giving an improper "pinpoint" instruction; and (2) a sentence of 25 years to life was cruel and

---

[1]According to Petitioner, he is now incarcerated at Centinela State Prison, Imperial California (Ct. Rec. 17).

**ORDER DENYING HABEAS PETITION ~ 1**

unusual punishment as applied to Petitioner.  The California Court of Appeal affirmed the judgment on September 24, 2004, in an unpublished opinion. Petitioner petitioned for review to the California Supreme Court, which was summarily denied on December 1, 2004.  Petitioner's conviction became final on March 1, 2005.

On December 5, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the Superior Court of California, County of Sacramento.  In his petition, he asserted seven claims for relief: (1) he received ineffective assistance of trial counsel; (2) there was insufficient evidence to support his conviction; (3) his conviction was wrongful for numerous reasons; (4) he received ineffective assistance of appellate counsel; (5) his expert testimony was deficient; (6) the trial court erroneously gave CALJIC No. 2.03; and (7) his sentence is cruel and unusual. The petition was denied on January 19, 2006.

Petitioner then filed a Petition for Writ of Habeas Corpus in the Court of Appeal for the State of California.  Again, he asserted seven claims for relief: (1) he received ineffective assistance of trial counsel; (2) there was insufficient evidence to support his conviction (actual innocence); (3) he received ineffective assistance of appellate counsel, client/attorney breakdown; (5) disproportionate sentence; conflict of interest, and numerous errors committed at trial; (6) the trial court erroneously gave CALJIC No. 2.03; and (7) his sentence is cruel and unusual.   This petition was summarily denied on March 9, 2006, without comment.

On April 12, 2006, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court.  In his petition, he asserted seven claims for relief: (1) ineffective assistance of trial and appellate counsel; (2) lack of sufficiency of the evidence; (3) denial of due process; (4) wrongful conviction; (5) disproportionate and illegal sentence; (6) wrong jury instructions; and (7) cruel and unusual punishment and unfair punishment.  The petition was summarily denied on December 13, 2006.

**ORDER DENYING HABEAS PETITION ~ 2**

1    On February 22, 2007, Petitioner filed his federal Petition for Writ of Habeas

2    Corpus presenting seven grounds for relief: (1) ineffective assistance of trial

3    counsel; (2) ineffective assistance of appointed appellate counsel; (3) insufficiency

4    of the evidence; (4) illegal instructions given to the jury by the trial court; (5) illegal

5    sentence imposed in violation of the U.S. Constitution as factors used to sentence

6    Petitioner were determined by the court and not by the jury, in violation of

7    Petitioner's rights under Cunningham v. California; (6) cruel and unusual sentence

8    imposed in violation of the U.S. Constitution; and (7) Petitioner is factually

9    innocent.

10                                       FACTS

11   The California Court of Appeal summarized the facts as follows:

12         Defendant and Racquel Wynn started dating when he was a
     senior in high school. Shortly after graduating, Wynn discovered she
13   was pregnant. The child, whom they named Nadia, was born in July,
     2001. Defendant and Wynn each lived with their parents.
14         On the Friday after Thanksgiving 2001, Wynn and Nadia spent
     the night at the residence of defendant's mother. On Saturday
15   morning, Wynn left for work shortly after 9:00 a.m. She told
     defendant Nadia was asleep on the bed; defendant replied that he
16   might take Nadia to his great-grandmother's house to visit his cousin.
           Later that morning, defendant's younger sister checked on
17   Nadia. Defendant, who had just gotten out of the shower with Nadia,
     was dressing Nadia. The sister noticed Nadia was starting to fall
18   asleep while Defendant dressed her, had "a raspy sound in her voice
     when she was breathing," and seemed lifeless. Defendant denied
19   knowing why Nadia was acting this way. Defendant's mother checked
     Nadia and also noticed her "raspy" breathing and a red mark on her
20   lip." Defendant explained that his younger brother had hit Nadia with
     a toy.
21         In the early afternoon, defendant's great-grandmother and his
     cousin arrived to take defendant and Nadia to the great-grandmother's
22   house for a visit. Since Nadia still appeared nonresponsive, they
     decided to stop at a clinic to have her examined.
23         When they were unable to find a clinic that was open, they
     called Wynn's father to ask for a ride to the hospital. While they were
24   waiting, defendant called 911 and reported that Nadia was not
     breathing normally. The 911 dispatcher sought to ascertain the source
25   of the problem; but defendant's responses merely described Nadia's
     physical symptoms. The dispatcher relayed instructions for mouth-to-
26   mouth resuscitation, which defendant attempted until the fire
     department emergency medical personnel arrived at 3:20 p.m. The
27   emergency medical personnel determined that Nadia was not breathing
     and had no pulse. They immediately established an airway to her
28   lungs, gave her oxygen, and undertook cardiopulmonary resuscitation.
     The emergency medical personnel, who did not observe any external

**ORDER DENYING HABEAS PETITION ~ 3**

signs of trauma, were unable to elicit much information from defendant, which they considered unusual.

Nadia was transported to the pediatric intensive care unit of a nearby hospital. She was already extraordinarily cold; her brain was unable to perform necessary functions; and bruises were apparent on her head, neck and abdomen.

Defendant was questioned by Sacramento police officers at the hospital. His only explanation for four-month-old Nadia's injuries was his assumption that his one-year-old brother had hit Nadia with a toy.

Early Sunday morning, defendant told Wynn that after the toy incident he had accidentally dropped Nadia while he was taking a shower with her and that she had hit her head on the back of the bathtub. Wynn's father advised defendant to speak with an attorney "immediately" before telling anyone else what had happened, and defendant's mother agreed.

On Monday, November 26, 2001, Nadia was removed from life support and died.

Dr. Kevin Coulter, the Medical Director of the Child and Adolescent Abuse Referral and Evaluation Center at the University of California Davis Medical Center, testified that the cause of death was multiple injuries to the head and brain as the result of being violently shaken in additional to another impact trauma during or after the shaking. He did not believe a fall of four feet would have accounted for Nadia's injuries. Dr. Coulter observed bruising of the tissues close to the skull that had resulted from a traumatic blow to the head, as well as bruising under the skin on the back of Nadia's neck, which was consistent with sustained choking. Nadia's skull was fractured with a force not normally seen from short falls.

Dr. Gregory Reiber, the forensic pathologist who performed the autopsy of Nadia, observed retinal hemorrhages and a widely dispersed subdural hematoma, which resulted from a rapid rotational movement of the head, as opposed to a simple fall.

Dr. Claudia Greco, a neuropathologist who examined Nadia's brain tissue with a microscope, observed damage to the brain stem and cervical spinal cord, which could have been caused only by severe shaking.

Defendant testified that his one-year-old brother struck Nadia in the mouth with a toy on the Saturday after Thanksgiving. After bathing Nadia in the cast-iron bathtub, he accidentally dropped her after she kicked her feet onto his chest and slipped out of his hands. Nadia fell about four feet and hit her head on the tub. Defendant did not tell his mother about the accident because he did not believe it was serious. Defendant testified that he answered all of the paramedics' questions, although he did not mention the fall.

Richard Robertson, Ph.D, a biomechanical consultant who specializes in the study of how much force is required to damage certain parts of the body, testified that the injuries Nadia suffered were consistent with, and could have been caused by the accident defendant described.

Additional witnesses for the defense included defendant's sister, his counsel, the emergency medical personnel who responded to the 911 call, and individuals who testified that defendant was not violent and was a good caretaker of children.

**STANDARD OF REVIEW**

**ORDER DENYING HABEAS PETITION ~ 4**

1    In order to succeed with his § 2254 petition, Petitioner must establish that he
2    is in custody in violation of the Constitution or laws or treaties of the United States.
3    28 U.S.C. § 2254(a).  Petitioner must also establish that his claims were adjudicated
4    on the merits in state court proceedings and that the adjudication of the claim
5    "resulted in a decision that was contrary to, or involved an unreasonable application
6    of, clearly established Federal law, as determined by the Supreme Court of the
7    United States; or resulted in a decision that was based on an unreasonable
8    determination of the facts in light of the evidence presented in the State court
9    proceeding." § 2254(d).  A determination of a factual issue made by the State court
10   shall be presumed to be correct. § 2254(e).  Petitioner has the burden of rebutting
11   the presumption of correctness by clear and convincing evidence.  *Id.*

12   A state court's decision is "contrary to" clearly established federal law only
13   where "the state court arrives at a conclusion opposite to that reached by [the
14   Supreme] Court on a question of law or if the state court decides a case differently
15   than [the Supreme] Court has on a set of materially indistinguishable facts."
16   *Williams v. Taylor*, 529 U.S. 362, 412-24 (2000).  There is an "unreasonable
17   application" of clearly established federal law when a state court "correctly
18   identifies the governing legal rule but applies it unreasonably to the facts of a
19   particular prisoner's case." *Id.* at 407-08.  A state court decision can also involve an
20   unreasonable application of clearly established precedent "if the state court either
21   unreasonably extends a legal principle from [the Supreme Court's] precedent to a
22   new context where it should not apply or unreasonably refuses to extend that
23   principle to a new context where it should apply." *Id.* at 407.  The state court's
24   error must be one that the habeas court concludes is objectively unreasonable, not
25   merely erroneous or incorrect.  *Id.* at 409-11.
26   ///

27                              PETITIONER'S CLAIMS

28   **1.    Ineffective Assistance of Trial Counsel**

**ORDER DENYING HABEAS PETITION ~ 5**

1    In claim one, Petitioner alleges that his trial counsel was ineffective for

2    failing to (1) interview important witnesses; (2) research into the physical and

3    medical issues of the victim, including hereditary links to hemophilia; (3) research

4    Petitioner's medical and mental history; and (4) retain appropriate medical experts.

5    Petitioner presented these arguments in his habeas petitions before the state

6    courts.  The Superior Court of California, County of Sacramento noted that

7    Petitioner failed to identify the prospective witnesses, or explain how these

8    witnesses would have testified.  It noted that Petitioner failed to present evidence to

9    show that the victim's birth involved the use of forceps or any scientific evidence

10   that such use causes physical injury to children in general and to the victim in

11   particular.  Likewise, Petitioner failed to present evidence of his alleged mental

12   state and failed to show what effect any "mental state" evidence would have had on

13   the trial, especially given the jury's reliance on the medical findings.  Finally,

14   Petitioner failed to identify any other expert witness whose testimony would have

15   been useful at his trial, and the court noted that counsel called Richard Robertson, a

16   biomechanical consultant, who testified that the victim's injuries could have been

17   caused by the accident that Petitioner described.

18   To establish ineffective assistance of counsel, the petitioner must show (1)

19   that counsel's performance fell below an objective standard of performance, and (2)

20   that the ineffective performance prejudiced the petitioner. *Strickland v.*

21   *Washington*, 466 U.S. 668, 687 (1984).

22    Petitioner has failed to overcome the presumption that counsel exercised

23   reasonable professional judgment.  Moreover, Petitioner has failed to show a

24   reasonably probability that, had counsel interviewed additional witnesses,

25   researched medical issues and mental health issues, or retained appropriate expert

26   witnesses, the result of the proceeding would have been different.   As such, the

27   state court's determination that Petitioner's counsel's performance was not

28   deficient was not contrary to, or an unreasonable application of federal law.

**ORDER DENYING HABEAS PETITION ~ 6**

1  **2.       Ineffective Assistance of Appellate Counsel**

2          In claim two, Petitioner argues that his appellate counsel was ineffective.  He

3  asserts that a variety of very meritorious issues were not raised because of the lack

4  of communication between Petitioner and his appointed appellate counsel.

5  Petitioner does not identify the meritorious issues that were not raised on appeal.

6  The failure to do so is fatal to Petitioner's claim because he must over come a

7  "strong presumption" that appellate counsel's performance fell within the "wide

8  range of reasonable professional assistance."  See Strickland, 466 U.S. at 689-90.

9  Likewise, Petitioner has not carried his burden of showing prejudice.  The

10 Sacramento County Superior Court held that Petitioner failed to show that his

11 appellate counsel's decisions regarding his appeal were unreasonable in light of his

12 conviction.  This determination was not contrary to, or an unreasonable application

13 of federal law.

14 **3.       Insufficiency of the Evidence**

15        In claim three, Petitioner argues there was not sufficient evidence to convict

16 him.  Specifically, he argues that there was not sufficient evidence to show that the

17 death was caused by "shaken baby" syndrome; nor was there sufficient evidence as

18 to the petitioner's willful actions.

19        The Sacramento County Superior Court rejected this claim, finding it was

20 procedurally barred when Petitioner failed to raise it on appeal.

21        Under the procedural bar doctrine, a federal court ordinarily will not review a

22 state court ruling if the state court found that the claim was barred pursuant to an

23 independent and adequate state procedural rule.  Robinson v. Schriro, 595 F.3d

24 1086, 1100 (9th Cir. 2009).  "A federal court will review the claim if Petitioner can

25 show either cause and prejudice, a fundamental miscarriage of justice, or if the

26 Government waived the procedural default.  Id., at 1100, n. 10 (citations omitted).

27 There are two types of procedural bars: express and implied.  Id. at 1100.  An

28 express procedural bar occurs when the petitioner has presented his claim to the

**ORDER DENYING HABEAS PETITION ~ 7**

state courts and the state courts have relied on a state procedural rule to deny or

dismiss the claim. Id.  An implied procedural bar occurs when the petitioner has

failed to fairly present his claims to the highest state court and would now be barred

by a state procedural rule from doing so.

Here, the state court expressly ruled that this particular claim was barred, and

the state has not waived the default.  Therefore, in order for the claim to survive,

Petitioner must show either cause and prejudice, or that a fundamental miscarriage

of justice would result if relief is not granted. Petitioner has not argued cause and

prejudice.  In Schlup v. Delo, the Supreme Court held that a petitioner's otherwise-

barred claims may be considered on the merits if his claim of actual innocence is

sufficient to implicate a fundamental miscarriage of justice.  513 U.S. 298, 315

(1995).  "In order to pass through Schlup's gateway, and have an otherwise barred

constitutional claim heard on the merits, a petitioner must show that, in light of all

the evidence, including evidence not introduced at trial, it is more likely than not

that no reasonable juror would have found petitioner guilty beyond a reasonable

doubt.  A petitioner need not show that he is 'actually innocent' of the crime he was

convicted of committing; instead, he must show that a court cannot have confidence

in the outcome of the trial."  Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002).  To be

credible, "a gateway claim requires 'new reliable evidence–whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence–that was not presented at trial."  House v. Bell, 547 U.S. 518,

537 (2006).

Petitioner has failed to meet his burden.  In claim seven, Petitioner makes a

freestanding claim of actual innocence.  In that claim, Petitioner asserts that he is

innocent because the medical evidence relied on at his trial "has since been

substantially rejected in the medical/forensic field by the increasing and evolving

learning and research in the area of shaken baby syndrome."  As noted by the State,

Petitioner does not offer any actual evidence or explain what the new research

**ORDER DENYING HABEAS PETITION ~ 8**

shows or how it would apply to his case.  This is fatal to Petitioner's claim of actual innocence.

**4.    Erroneous Jury Instruction**

In claim four, Petitioner asserts that the jury was erroneously instructed because it was error to give a "pin point" instruction to the jury, forcing the jury to focus on the alleged misleading statement of Petitioner as proof of his guilt, as well as other instructions that were given in the cases.  The instruction in question instructs the jury that the defendant's deliberately false statements may be considered as a circumstance tending to prove a consciousness of guilt.

The California Court of Appeal denied this claim on direct appeal, noting that the California Supreme Court has repeatedly rejected the claim that CALJIC No. 2.03 is an impermissible pinpoint instruction.

Even if the instruction was incorrect under state law, this is not a basis for habeas relief.  Estelle v. McGuire, 502 U.S. 62, 71 (1992).  In order to be entitled to habeas relief, Petitioner must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Id.  The instruction "'may not be judge in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Id.

Here, the jury instruction was properly given, and did not infuse the trial with unfairness as to deny due process of law.  Turner v. Marshall, 63 F.3d 807, 819-20 (9th Cir.1995), overruled in part on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir.1999) (en banc).  Petitioner made several inconsistent statements concerning the incident and related to the crime for which he was tried.

**5.    Sixth Amendment violation -** Cunningham v. California

In claim five, Petitioner asserts that his sentence was imposed in violation of the U.S. Constitution as factors used to sentence Petitioner were determined by the court and not by the jury, in violation of Petitioner's rights under Cunningham v. California.  Specifically, Petitioner asserts that he sought a sentence of probation

**ORDER DENYING HABEAS PETITION ~ 9**

1    that was denied by the trial court using factors set forth in the probation report.[2]

2      In Cunningham, the United States Supreme Court invalidated California's

3    Determinate Sentence Law to the extent it allows a trial court to consider at the time

4    of sentencing certain aggravating factors that were not found by a jury to be true

5    beyond a reasonable doubt, other than prior convictions.  549 U.S. 270, 293 (2007).

6    It follows that Cunningham does not apply where, as here, Petitioner is serving an

7    indeterminate sentence.

8      In this case, Petitioner was eligible to be considered for probation.  The trial

9    court expressly stated that its decision had been guided by the factors set forth in

10    the California rules and noted in particular the vulnerability of the four-month-old

11    victim to deny probation.  The denial of probation did not implicate Petitioner's

12    constitutional rights.  See United States v. Belgard, 894 F.2d 1092, 1100 (9th Cir.

13    1990) (holding that defendants do not have a constitutional right to probation).

14    Similarly, Petitioner does not have a constitutional right to have a jury find the facts

15    supporting the denial of probation.

16    **6.**    **Cruel and Unusual Sentence**

17      In claim six, Petitioner asserts that his sentence was cruel and unusual

18    because he was 20 years old at the time of his sentencing and he was sentenced to

19    25 years to life.

20      The California Court of Appeal rejected Petitioner's argument on direct

21    appeal.  It noted that Petitioner waived this claim by failing to raise it in the trial

22    court.  It recounted that the jury found that Petitioner violently abused a helpless

23    four-month-old infant and then repeatedly failed to disclose the facts of the infant's

24    injuries.  It noted that the victim posed no threat to defendant's well-being.

25      The Eighth Amendment protects against the infliction of "cruel and unusual

26

27    [2]The State argues that this claim is barred by Teague v. Lane, 489 U.S. 288

28    (1989).  This argument is now foreclosed by Butler v. Curry, 528 F.3d 624 (9th Cir.

   2008).

**ORDER DENYING HABEAS PETITION ~ 10**

1  punishments." U.S. .Const. amend. VIII.  "The Eighth Amendment does not

2  require strict proportionality between crime and sentence.  Rather, it forbids only

3  extreme sentences that are "grossly disproportionate" to the crime."  Ewing v.

4  California, 538 U.S. 11, 23 (2003) (citation omitted).

5          In this case, Petitioner's relative youth is far outweighed by other factors

6  relating to his conduct, including the vulnerability of the victim and the nature and

7  scope of the injuries.  The state court's conclusion that Petitioner's sentence was

8  neither cruel or unusual was not contrary to or an unreasonable application of

9  clearly established federal law.

10 **7.    Actual Innocence**

11         In claim seven, Petitioner argues that he is innocent of the charges.  The

12 United States Supreme Court has declined to recognize a freestanding innocence

13 claim in a capital claim.  House v. Bell, 547 U.S. 518, 555 (2006).  Given that

14 Petitioner has failed to establish the gateway standard, he has failed to meet the

15 more stringent standard of the hypothetical freestanding claim.

16                         CERTIFICATE OF APPEALABILITY

17         Because this is the Court's final order in this matter, the December 1, 2009

18 amendments to Rule 11(a) of the Federal Rules Governing Section 2254 Cases

19 require the Court to determine in this Order whether a certificate of appealability

20 should issue.  The Court finds additional briefing on this issue unnecessary.

21         The Antiterrorism and Effective Death Penalty Act of 1996 requires a habeas

22 petitioner appealing the denial of a 28 U.S.C. § 2254 to obtain a certificate of

23 appealability. 28 U.S.C. § 2253(c).  A court may issue a certificate of appealability

24 only if the "applicant has made a substantial showing of the denial of a

25 constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must show that

26 "reasonable jurists could debate whether . . . the petition should have been resolved

27 in a different manner or that the issues presented were adequate to deserve

28 encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000)

**ORDER DENYING HABEAS PETITION ~ 11**

(internal quotations omitted).  The decision to issue a certificate of appealability turns not on the court's assessment of the applicant's chances for success on appeal, but whether the appeal would raise material and debatable questions. See Miller-El v. Cockrell, 537 U.S. 322, 342 (2003).

The Court finds that Petitioner's claims do not justify the issuance of a certificate of appealability.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Petition under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody (Ct. Rec. 1) is **DENIED**.

2.   The Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel and petitioner, and **close the file**.

**DATED** this 24th  day of May, 2010.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge


C:\WINDOWS\Temp\notes101AA1\deny.wpd

**ORDER DENYING HABEAS PETITION ~ 12**