UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ELL JAY JONES, JR.

    Petitioner,

v.

M. KNOWLES, et al.,

    Respondents.

NO. CV-07-404-RHW

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

    Before the Court is Petitioner's First Amended Petition for Writ of Habeas Corpus, 28 U.S.C. Section 2254 (Ct. Rec. 16).

    Petitioner is a state prisoner currently confined by the California Department of Corrections at Kern Valley State Prison, Delano, California, and is proceeding *pro se*. In Petitioner's first trial, the jury found Petitioner guilty of two counts of Possession of Access Cards with Intent to Defraud, but hung on First Degree Murder with special circumstances and Receiving Stolen Property. In his second trial, the jury found Petitioner guilty of First Degree Murder with Special Circumstances.[1] He was sentenced to life without parole plus seven years.

    In his petition, Petitioner asserts eleven claims for relief:

    (1) the evidence was insufficient to support the murder with the special circumstances count;

    (2) denial of assistance of counsel when the trial judge failed to withdraw Petitioner's request to proceed *pro se*;

---

[1] Count II, which was Receiving Stolen Property, was dismissed prior to the second trial.

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 1**

(3) denial of due process when the trial court declined to give a requested state jury instruction;

(4) denial of due process when the trial court failed to hear evidence in support of a motion for new trial;

(5) denial of due process by the trial court's exclusion of defense impeachment evidence;

(6) denial of due process by the trial court's restriction of defense witness testimony and instruction to jury to disregard part of it;

(7) trial court erred in using invalid prior convictions to enhance his sentence; and

(8) four claims of ineffective assistance of appellate counsel:

(a) failure to argue on appeal that the trial court erred in failing to conduct a full investigation into juror misconduct:

(b) failure to argue on appeal that the trial court abused its discretion in denying Petitioner's motion for mistrial after inadmissible evidence was revealed to the jury;

c) failure to argue on appeal that pre-trial counsel's breach of attorney-client confidentiality prejudiced Petitioner's right to a fair trial; and

d) failure to challenge on appeal the trial court's refusal to instruct the jury using the defense requested jury instructions.

## PROCEDURAL FACTS

In Petitioner's first trial, which was prosecuted as a capital case, the jury convicted him on Counts III and IV, Receiving an Access Card with Intent to Defraud, but hung on Count I, First Degree Murder with Special Circumstances, and Count II, Receiving Stolen Property. The trial court then found in a bifurcated proceeding that Petitioner had 11 prior felony convictions, including six for first degree robbery, three for first degree burglary, one for second degree burglary, and one for assault.

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 2**

The State of California retried Defendant on Counts I and II, but it was not prosecuted as a capital case. Count II was dismissed, and the jury convicted Petitioner of first degree murder and found the burglary/murder special circumstance true, but the robbery/murder special circumstance not true.

Petitioner filed a direct appeal with the California Court of Appeal. He did not challenge his convictions on Counts III and IV. In his appeal, Petitioner asserted five claims: (1) insufficient evidence supported his conviction for murder; (2) Judge Long committed evidentiary and instructional error as to the testimony of a jailhouse informant; (3) Judge Long denied Petitioner's constitutional right to counsel and his state-law right to advisory counsel; (4) Judge Long erroneously refused to consider new evidence offered on Petitioner's Motion for New Trial; and (5) Petitioner's prior convictions should have been stricken. The California Court of Appeal affirmed the judgment in an unpublished opinion and the petition for review was denied by the Supreme Court of California.

Petitioner then filed a Petition for Writ of Habeas Corpus in the Sacramento County Superior Court. In his Petition, Petitioner presented six claims: (1) his appellate counsel was ineffective in failing to claim on appeal that the trial court erred in denying Petitioner a full investigation into possible juror misconduct; (2) his appellate counsel was ineffective in failing to claim on appeal that the trial court erred in denying his motion for mistrial after "halfway house" was erroneously mentioned during trial before the jury; (3) his appellate counsel was ineffective in failing to claim on appeal that pretrial counsel for Petitioner had prejudicially undermined his right to effective assistance of counsel by divulging to the deputy district attorney that Petitioner intended to eventually act as his own attorney at trial; (4) his appellate counsel was ineffective in failing to claim on appeal that his diabetic condition prejudicially interfered with his ability to self-represent; (5) his appellate counsel was ineffective in failing to claim on appeal that on August 26, 2003, Petitioner had erroneously been denied sufficient funding

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 3**

for his requested ancillary services; and (6) his appellate counsel was ineffective in failing to claim on appeal that certain jury instructions for first degree special-circumstance murder that Petitioner proffered at the second trial was erroneously rejected by the trial court. The superior court concluded that Petitioner failed to established that had appellate counsel made these arguments, it would have resulted in a reversal of the judgment and denied the Petition.

Petitioner then filed a Petition for Writ of Habeas Corpus in the California Court of Appeal, Third Appellate District. In his Petition, Petitioner asserted the same grounds for relief as presented in his habeas petition to the Sacramento County Superior Court. The California Court of Appeal summarily denied the petition. On January 9, 2007, Petition filed a Petition for Writ of Habeas Corpus, asserting the same grounds for relief as presented in his previous habeas petitions. The California Supreme Court summarily denied his petition.

## FACTS

As the California Court of Appeal noted, there was no direct evidence that Petitioner killed Gary Call, but concluded that there was overwhelming direct evidence that Petitioner attempted to use Call's ATM card and credit card fraudulently. The direct evidence was a videotape catching Petitioner in the act shortly after Call was last seen alive. The Court of Appeal characterized Petitioner's attempts to explain his use of the cards as ludicrous and concluded that the evidence pointed to Petitioner as the killer. The Court of Appeal noted that if the jury disbelieved Petitioner's story, it could have reasonably inferred that Petitioner got the cards by stealing Call's wallet from his home, then killed him when confronted.

The following is the Court of Appeal's recitation of the evidence presented at trial with respect to Count 1:

> On Monday, March 9, 1998, Call, a 62-year-old semi-retired architect, told business associate and friend Jay Halverson that he was going to leave work early to do some gardening and chores. Call made a

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 4**

deposit at the Bank of America branch at Broadway and 15th Street at 3:20 p.m. He then returned to his home at 2401 Montgomery Way, at the corner of 24th Street, in Curtis Park, where neighbors saw him gardening as late as 5:45 p.m., wearing sweat pants and a T-shirt or sweatshirt.

By the afternoon of Thursday, March 12, Halverson had not seen or heard from Call again. That evening Halverson went to Call's home with a neighbor to check on him. They saw Tuesday's newspaper inside the security door, though Call had the habit of bringing the paper in to work. No one answered the doorbell, but dogs were barking inside and the stereo system was on. Except for the door to the garage, all doors and windows were locked. Entering through that door, the two men found Call's body in the basement by the stairs; rigor mortis had set in.

Call had sustained 12 stab wounds to his torso, apparently made by a single-edged straight-bladed knife. Two of them would have been fatal in a minute or two. Almost five units of blood had leaked into his chest cavity. The lower wounds had bled little, suggesting the other wounds had caused Call's blood pressure to drop. Very little blood was found on the outside of his body. Because he was stabbed through clothing, the knife probably would not have gotten much blood on it. The date and time of death could not be established with certainty.

The investigating officers found a light trail of blood on the basement stairs. They also found drops of blood on a mop handle, a drop on the concrete at the base of the steps, and several drops on the lower step. A smear pattern on one step might have come from a shoe sole, but the sole's pattern could not be identified. A criminalist opined that Call had confronted his killer on the stairway.

Aside from the immediate area of the murder, Call's house was immaculate. According to his housekeepers, who had recently cleaned the house, he had the habit of putting his wallet and ring on his bedroom dresser when he did yard work. The officers found a ring there, but no wallet. They also did not find any significant fingerprints in the house.

*Defendant's Activities*

No one reported having seen defendant at or near the crime scene, and defendant denied ever having been in that part of Curtis Park. However, for three weeks, up until March 7, 1998, he had lived in another part of the neighborhood at Phoenix House, a "boarding house" on 27th Street near Broadway, eight-tenths mile from Call's house; he regularly shopped at Compton's Market at 24th Street and Second Avenue, even closer to Call's house. The Oak Park Bank of America branch was about two miles from Call's house.

On March 7, 1998, defendant moved to a hotel in downtown Sacramento. He knew the number 51 bus that connects downtown to Curtis Park and Oak Park by way of Broadway; he said he was waiting for it on the evening of March 9 when he found the plastic bag [which contained two credit cards, along with a piece of paper or

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 5**

receipt from the bank, a package of condoms, and a pair of socks].

Defendant told Detective Winfield he suffered from insulin-dependent diabetes. According to defendant, the disease had caused complications, including hypoglycemic episodes and circulatory problems in his feet.

Defendant also told Detective Winfield that when he arrived in Sacramento he had few clothes, and some did not fit. He augmented his wardrobe at the Clothes Closet and the Goodwill store, both in Oak Park, where he could get free or cheap clothes; on March 9 he got a $50 "medical emergency" loan from "Chris" at Loaves and Fishes to buy new shoes. However, he also "donated" clothes, because the "code of the streets" required people in need to share with each other. This is what he had probably done with the clothes he was wearing in the videotape: they did not fit properly, so he disposed of them at the Clothes Closet in an unmonitored cart out front.

Detective Winfield observed that the sweatshirt in the videotape appeared to fit perfectly well, but defendant was wearing it inside out; she asked why. He said it was dirty and he routinely wore dirty clothes inside out. He denied it was done to hide bloodstains.

*Defendant's Cellmate*

Emil Ogg, defendant's former cellmate at the county jail, was called by the People to testify about a fight with defendant in their cell and Ogg's statements to jail deputies afterward. He admitted he had claimed defendant said: "Now I'm fittin['] to kill you just like I did that white boy[.]" He testified, however, that defendant did not really say that; Ogg had made it up to get even with defendant, who had won the fight.

*Defense Case*

Defendant did not testify in either trial. However, he represented himself through most of both trials, calling numerous witnesses, cross-examining effectively, and delivering a closing argument in the second trial that Judge Long called "superb." In addition to highlighting the lack of direct evidence connecting him to Call's murder, defendant put on a medical defense through Dr. Robert Blau, an endocrinologist who had reviewed defendant's medical records.

Dr. Blau testified in both trials that defendant was a Type 1 diabetic under tight control: his body could not produce insulin, he took large amounts of it every day, and he also took other medications to keep his blood sugar as low as possible. Such aggressive management, though it retards the development of complications from diabetes, may lower blood sugar too much from time to time, causing hypoglycemia.

Hypoglycemia produces fatigue, headache, nervousness, hunger, and anxiety; if not aborted, it can lead to confusion, physical weakness, and a complete shutdown of the body. Heavy or unusual physical exertion reduces blood sugar, making a hypoglycemic episode more

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 6**

likely. A physical altercation lasting three or four minutes would probably have this effect, but a shorter one would not because the release of adrenaline into the system would temporarily neutralize the effect of the drop in blood sugar. A person who realizes he is becoming hypoglycemic can abort the episode by eating candy or drinking a soda, but people do not always realize an episode is starting, especially if their attention is focused on something else. Someone who has just been through an episode probably could not walk three miles immediately afterward.

Dr. Blau testified that defendant said he had had numerous hypoglycemic episodes and it took him 30 to 45 minutes to recover from one. Dr. Blau admitted, however, that he had no independent evidence of these episodes. When shown the videotape of defendant at the ATM on March 9, 1998, Dr. Blau opined that defendant did not appear to be having an episode. Dr. Blau admitted he had not seen defendant earlier that day.

Defendant also called Emil Ogg as his own witness. Ogg gave two additional reasons for coming forward now to deny his prior accusation: (1) he had been subpoenaed, and (2) it is "only right" that his former statement not be used against defendant because "you are facing life, man." Judge Long granted the People's motion to strike the second remark and admonished the jury that "the consequences of this case, the penalty," was "none of your concern."

*Rebuttal*

Ogg testified that he had also lied when he told a deputy defendant had started the fight, broken Ogg's nose, and stomped on his back. However, when shown photographs of himself just after the fight, Ogg admitted that his nose was broken, that defendant had stomped on his back, and that defendant had also caused a gash on Ogg's head. A jail deputy testified that just as he got to the cell he heard defendant remark, "I'm going to kill him." (Lod. Doc. 4, at 3-15.)

### STANDARD OF REVIEW

In order to succeed with his § 2254 petition, Petitioner must establish that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner must also establish that his claims were adjudicated on the merits in state court proceedings and that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). A determination of a factual issue made by the

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 7**

State court shall be presumed to be correct. § 2254(e).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.*

A state court's decision is "contrary to" clearly established federal law only where "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-24 (2000).  There is an "unreasonable application" of clearly established federal law when a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.  A state court decision can also involve an unreasonable application of clearly established precedent "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.  The state court's error must be one that the habeas court concludes is objectively unreasonable, not merely erroneous or incorrect. *Id.* at 409-11.

## PETITIONER'S CLAIMS

**1.   Insufficiency of the Evidence**

Petitioner asserts that the evidence considered by the jury was insufficient to support the murder with the special circumstances count.

The California Court of Appeal found that there was sufficient evidence to support Petitioner's conviction of murder.  The Court of Appeal concluded that Petitioner's attempt to get cash from Call's bank by using Call's bank card and credit card shortly after Call was last seen alive created an inference that Petitioner had taken them from Call illicitly, absent an explanation that Petitioner innocently possessed the cards to begin with.  Thus, it was logical for the jury to infer that the same person who stole the cards also committed the murder.  Furthermore, Petitioner's false statements relating to any charged crime showed consciousness

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 8**

of guilt as to all the charged crimes, because all the evidence was interconnected. The Court of Appeal concluded that "[a]lmost every part of defendant's story about the cards was flatly false or patently absurd." Consequently, "[b]ecause defendant's story about the cards was incredible and betrayed consciousness of guilt, the jury could reasonably have inferred he came by them through burglarizing Call's home." Likewise, because there was no corroborating evidence that Petitioner was elsewhere, the jury could reasonably have inferred that if Petitioner was the burglar, he was also the killer. Additionally, the Court of Appeal found that Petitioner's expert witness did not come close to establishing a plausible medical defense. In the end, the Court of Appeal concluded:

> there was overwhelming evidence defendant criminally attempted to use the victim's cards, then made a string of false statements about his actions. This evidence in turn generated reasonable inferences, not rebutted by any credible evidence, that he had committed prior crimes to obtain those cards. In addition, he allegedly admitted to Ogg that he had killed a "white boy," and the jury could have believed, despite Ogg's recantation, that defendant made that admission.

Under the standard set forth in *Jackson v. Virginia*, in order to prevail on his claim of insufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 318-19 (1979), *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298 (1995).

The Court of Appeal's denial of Petitioner's claim was not contrary to or an unreasonable application of federal law.

**2.    Denial of Assistance of Counsel**

Petitioner argues that he was denied effective assistance of counsel when pretrial proceeding judge denied his repeated requests to be appointed professional counsel to represent him at his second trial and when Judge Long denied his request before the jury was empaneled.

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 9**

The California Court of Appeal noted that Petitioner chose to represent himself throughout the greater part of both trials. In the course of each trial, Petitioner frequently changed his mind about whether he wanted to do so, and if so with what legal assistance in the form of "advisory" or "standby" counsel. In denying Petitioner's claim that he was denied effective assistance of counsel, the Court of Appeal noted that there is no constitutional right to advisory or standby counsel, nor is there a constitutional right to have counsel *reappointed* after a defendant voluntarily and intelligently waived his right to counsel on the record. The Court of Appeal made the following observations: (1) Petitioner showed the capacity to represent himself competently in his first trial; (2) Petitioner showed a "proclivity to substitute counsel" in his first trial; (3) Petitioner's ostensible reason for requesting reappointment of counsel or appointment of advisory counsel–that alleged effects of his worsening diabetic condition and his medication– was not supported by objective evidence; (4) the length and stage of the proceedings counted against Petitioner; and (5) the likelihood of delay or disruption of the proceedings was manifest.

As noted by the court of Appeal, there is not any clearly established Supreme Court precedent that recognizes a federal constitutional right to the reappointment of counsel once a defendant exercises his right to represent himself, nor is there a recognized federal constitutional right to advisory counsel for a defendant who had insisted on represented himself.

Absent well-settled United States Supreme Court precedent on this issue, the Court of Appeal's denial of Petitioner's claim was not contrary to or an unreasonable application of federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (holding that when there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue).

**3.     Denial of Defense Requested Jury Instruction**

Petitioner argues that his due process rights were violated when the trial

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** ~ 10

judge denied his request to give a California statutory mandated jury instruction admonishing the jury on how to view in-custody informant's testimony.

In order to prevail on his due process claim, Petitioner must show that instruction error "by itself so infected the entire trial that the resulting conviction violated due process" and not merely that the instructions as given were "undesirable, erroneous, or even universally condemned." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The Court of Appeal found that the trial court erred in concluding that Ogg was not a jailhouse informant, but concluded that the omission of the instruction actually benefitted Petitioner. The Court of Appeal noted that to instruct the jury to view Ogg's testimony with "caution and close scrutiny" would not have been to Petitioner's advantage because Ogg's testimony favored Petitioner.

Consequently, the failure to instruct the jury did not have a substantial or injurious effect or influence so as to violate Petitioner's due process rights.

**4.    Failure to Hear Evidence in Support of New Trial Motion**

Petitioner argues that he was denied his due process rights during the August 28, 2003 hearing on his Motion for New Trial, when the trial judge capriciously changed the start time of the hearing without adequate notice to the defense, making it impossible for him to have material witnesses available to provide crucial testimony at the hearing.

The Court of Appeal concluded that Judge Long was within this discretion to decide that Dr. Blau could contribute nothing useful and to decide the motion on the existing record.

Petitioner has not identified any United States Supreme Court precedent that requires that the state court hold an evidentiary hearing on a defendant's motion for new trial. *See Carey*, 549 U.S. at 77. Moreover, the Court of Appeal's conclusion that Petitioner's due process rights was not violated was not an unreasonable determination of the facts in light of the evidence presented in the State court

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 11**

proceeding.

### 5. Exclusion of Defense Impeachment Evidence

Petitioner argues that the trial court's exclusion of defense impeachment evidence was prejudicial and resulted in a denial of his due process rights. He asserts that he sought to impeach potentially damaging evidence by introducing evidence that would show that the informant had a pattern of making false accusations for the purpose of manipulating authority.

The admission of evidence is an issue of state law. Simple errors of state law do not warrant federal habeas relief. *Estelle*, 502 U.S. at 67. The ultimate question is whether the state proceedings satisfied due process. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "[T]he presence of absence of a state law violation is largely beside the point." *Id.* Consequently, "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Id.* (citations omitted).

Here, the trial court's ruling that prevented Petitioner from presenting Sheriff Deputy Green's testimony did not render the trial fundamentally unfair. As the Court of Appeal noted, (1) Petitioner did not provide a proper offer of proof to justify Petitioner's request; (2) Green's proposed testimony would have been hearsay as to the content of any report that was not before the jury; (3) even if Green had given the testimony Petitioner predicted, the jury would not have to believe it; (4) since Ogg has already called himself a liar with respect to his original accusation against Petitioner, any further evidence tending to show Ogg made false reports in the jail would have been cumulative and a waste of the jury's time; and (5) the requested testimony would have amounted to conducting a mini-trial on matters that had minimal probative value as to the charges against Petitioner. As such, Petitioner's claim fails.

### 6. Restriction of Defense Witness's Testimony and Jury Instruction

Petitioner argues that his due process rights were violated when the trial

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 12**

court restricted a material defense witness's testimony and instructed the jury to disregard a portion of the testimony. During Emil Ogg's testimony, he made a reference regarding the fact that Petitioner was facing a life sentence.

The Court of Appeal concluded that because the Petitioner did not make known to the trial court the theory of relevance he relied upon in his appeal, he forfeited his claim. This is an adequate and independent state law basis upon which the state court denied relief. As such, this Court is not permitted to reach the merits of the claim unless Petitioner first demonstrates cause and prejudice. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Petitioner has not done so. Moreover, as the Court of Appeal explained, the exclusion of Ogg's remark, if in error, was harmless because (1) the fact that Petitioner was facing life in prison may have explained why Ogg recanted his statement, but it also provided an equally compelling reason why Ogg would fabricate his recantation; and (2) the jury knew that Petitioner was facing a first degree murder charge and would have already known that first degree murder is punishable by life in prison.

**7.    Use of Invalid Prior Convictions to Enhance Sentence**

Petitioner argues that his sentence is unlawful because the sentencing judge used invalid prior convictions to enhance his sentence under the California three-strikes statute. Specifically, Petitioner argues that Judge Long used prior convictions from a 1991 San Joaquin County criminal proceeding that was held in violation of his right to be free from involuntary drugging during trial to enhance his sentence.

Petitioner's claim is barred because the sentence at issue is no longer subject to challenge of its own accord. *See Daniels v. United States*, 532 U.S. 374, 382 (2001) ("If, however, a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 13**

validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255.").

**8.     Ineffective Assistance of Appellate Counsel**

Petitioner argues that his counsel on appeal was ineffective for failing to argue on appeal that (1) the trial court erred in denying Petitioner a full investigation into alleged juror misconduct; (2) the trial court abused its discretion in denying Petitioner's motion for mistrial after inadmissible evidence was revealed to the jury; (3) failure to argue on appeal that pre-trial counsel's breach of attorney-client confidentiality prejudiced Petitioner's right to a fair trial and (4) the trial court committed plain error for refusing defense requested jury instructions. Petitioner raised these claims in his habeas petitions presented to the state courts.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set forth in *Strickland v. Washington*, 466 U.S 668 (1984). *Turner v. Calderon*, 281 F.3d 851, 871 (9th Cir. 2002). To be constitutionally effective, "counsel need not appeal every possible question of law." *Id*. (citations omitted). A failure to raise untenable issues on appeal does not fall below the *Strickland* standard. *Feathersone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991).

The Sacramento County Superior Court found that Petitioner's counsel was not ineffective in a well-reasoned opinion. The court noted that Petitioner failed to provide any reasonably available documentary evidence to support his claim of juror misconduct, other than his own affidavit, and noted that the term "halfway house" was said quickly and not considered by the jurors or had any affect on any juror. The court concluded that an appeal of this issue would not have resulted in a reversal of the judgment. In the same manner, the court concluded that the failure to argue that the trial court erred in denying Petitioner's motion for mistrial after the term "halfway house" was erroneously mentioned during the trial before the jury was not ineffective because it would not have resulted in a reversal of the

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 14**

judgment.  The court found that Petitioner failed to show how he was prejudiced as he was already self-representing by the time of the June 2, 2003 hearing, and concluded that whether or not a criminal defendant wishes to self-represent is not a matter of trial strategy.  As such, the failure to appeal this issue would not have resulted in a reversal of judgment.   Finally, the court found that the proffered jury instructions were not supported by California law.

The Superior Court's denial of the claim was not contrary to or an unreasonable application of the *Strickland* standard.

## CERTIFICATE OF APPEALABILITY

Because this is the Court's final order in this matter, the December 1, 2009 amendments to Rule 11(a) of the Federal Rules Governing Section 2254 Cases require the Court to determine in this Order whether a certificate of appealability should issue.  The Court finds additional briefing on this issue unnecessary.

The Antiterrorism and Effective Death Penalty Act of 1996 requires a habeas petitioner appealing the denial of a 28 U.S.C. § 2254 to obtain a certificate of appealability. 28 U.S.C. § 2253(c).  A court may issue a certificate of appealability only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  The decision to issue a certificate of appealability turns not on the court's assessment of the applicant's chances for success on appeal, but whether the appeal would raise material and debatable questions. *See Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003).

The Court finds that Petitioner's claims do not justify the issuance of a certificate of appealability.  Petitioner has not made a substantial showing of the denial of a constitutional right.

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 15**

Accordingly, **IT IS HEREBY ORDERED:**

1. Petitioner's First Amended Petition under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody (Ct. Rec. 16) is **DENIED**.

2. The Court declines to issue a Certificate of Appealability.

3. Petitioner's Request for Appointment of Counsel (Ct. Rec. 48) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and petitioner, and **close the file**.

**DATED** this 30th day of November, 2010.

    *s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

C:\WINDOWS\Temp\notes101AA1\DENY2.WPD

**ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS ~ 16**